UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 26-60133-CIV-SINGHAL

DJIBRIL DANSOKO,

     Petitioner,

v.

MARKWAYNE MULLIN[1], Secretary of
the United States Department of
Homeland Security, *et al.,*

     Respondents.
_____/

## **ORDER**

Petitioner Djibril Dansoko is a Guinean national present in the United States without authorization.  He is currently being detained at Broward Transitional Detention Center, and he filed the present Petition for Writ of Habeas Corpus (DE [1]), seeking either immediate release or a bond hearing.  Because Petitioner is lawfully detained under 8 U.S.C. § 1225, the Petition (DE [1]) is denied.

I.     BACKGROUND

On October 9, 2023, at 4:29 p.m., Petitioner entered the country without the necessary legal documentation to enter or remain in the United States.  (DE 5-8] at 3). At 4:30 p.m., Border Patrol officers detained him.  *Id.*  The Department of Homeland Security ("DHS") then released him on his own recognizance under 8 U.S.C. § 1226 and issued him a Notice to Appear for an immigration hearing on March 27, 2028.  (DE [1-3]; [5-2] [5-3]).  On April 26, 2024, Petitioner applied for asylum.  (DE [1-5]).  On November

---

[1] Markwayne Mullin replaced Krisi Noem as Secretary since the Petition was filed.

1

25, 2025 Petitioner reported for his regular check-in with Immigration Customs Enforcement ("ICE").  (DE [5-1] at 2).  ICE then canceled Petitioner's order of release on his own recognizance and detained him.  *Id.*  He has been detained since.  (DE [5-6]).  Petitioner requested release on bond, but the immigration judge denied his request for lack of jurisdiction under *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025).[2]

Petitioner filed a Petition for Writ of Habeas Corpus, (DE [1]), and the government responded. (DE [5]). This Court held a hearing on February 11, 2026. (DE [8]).  At the hearing, the Court requested supplemental briefing on Petitioner's due process arguments.  Both parties submitted supplemental briefs.  Having considered the parties' briefs and arguments raised at the hearing, the Petition is denied.

II.     LEGAL STANDARD

District courts have authority to grant writs of habeas corpus.  28 U.S.C. § 2241(a). Habeas corpus is fundamentally "a remedy for unlawful executive detention."  *Munaf v. Geren,* 553 U.S. 674, 693 (2008) (citation omitted).  A writ may be issued to a petitioner who demonstrates that he is being held in custody in violation of the Constitution or federal law. *See* 28 U.S.C. § 2241(c)(3).  The court's jurisdiction extends to challenges involving immigration-related detention.  *See Zadvydas v. Davis,* 533 U.S. 678, 687 (2001).

III.    DISCUSSION

Petitioner claims that he has been unlawfully detained without bond under 8 U.S.C. § 1225, and that he should be released.  This Court has previously explained that aliens present in the United States without admission are "applicants for admission" under 8

---

[2] The Court continues to take issue with immigration judges confusing jurisdiction with authority.  Under *Hurtado*, immigration judges may lack authority to grant release on bond, but they do not lack jurisdiction to hold a hearing.  For example, this Court may not have authority to order a bond hearing, but the Court still has jurisdiction to hear the petition under 28 U.S.C. § 2241.

2

U.S.C. § 1225 and are therefore subject to mandatory detention under § 1225.  *See, e.g.*, *Morales v. Noem*, — F. Supp. 3d —, 2026 WL 236307, at *8 (S.D. Fla. Jan. 29, 2026); *Banchi v. Diaz*, No. 0:25-cv-62341 (S.D. Fla. Feb. 2, 2026); *Doria v. Warden, Broward Transitional Center*, No. 0:26-cv-60112 (S.D. Fla. Feb. 9, 2026).  Multiple courts of appeals have done the same.  *See Buenrostro-Mendez v. Bondi*, — F.4th —,  2026 WL 323330, at *4 (5th Cir. Feb. 6, 2026); *Avila v. Bondi*, — F.4th —, 2026 WL 819258, at *4 (8th Cir. Mar. 25, 2026).  And other district courts have also reached the same conclusion.  *See, e.g.*, *Lopez v. Dir. of Enf't & Removal Operations*, — F. Supp. 3d —, 2026 WL 261938, at *7 (M.D. Fla. Jan. 26, 2026); *Weng v. Genalo*, 2026 WL 194248, at *3 (S.D.N.Y. Jan. 25, 2026).

At the hearing, Petitioner's counsel argued that other statutory provisions, like 8 U.S.C. § 1158(d)(2), assume that asylum seekers will not be detained.  Section 1158(d)(2) permits the Attorney General to provide employment authorization for asylum seekers.  According to Petitioner, this statute only makes sense if asylum seekers are free and not detained.  But reading § 1158 as prohibiting the government from detaining asylum seekers would explicitly conflict with § 1225(b), which authorizes their detention. "If the officer determines at the time of the interview that an alien has a credible fear of persecution (within the meaning of clause (v)), the alien shall be detained for further consideration of the application for asylum."  8 U.S.C. § 1225(b)(1)(B)(ii).[3]  The Court

---

[3] While an asylum seeker is generally irremovable pending adjudication of an asylum application, 8 U.S.C. § 1158 authorizes removal to third countries in certain instances.  Section 1158(a)(2) provides that an alien may be denied an opportunity to seek asylum in the United States and removed to a third country, so long as that country is willing to accept the alien pursuant to treaty, is safe for the alien, and offers the alien a "full and fair procedure for determining a claim to asylum or equivalent temporary protection."  But this statute is not applicable here, since neither party has indicated that Respondents intend to remove Petitioner to a third country.

reads statutory provisions to be compatible—not contradictory—whenever possible  *See* A. Scalia & B. Garner, Reading Law: The interpretation of Legal Texts 180-81 (2012).

Asylum seekers may be detained under § 1225(b) or § 1226, just like other applicants for admission.  *See Hernandez v. Krome N. Serv. Processing Ctr.*, — F. Supp. 3d —, 2026 WL 851402, at *4 (S.D. Fla. Mar. 25, 2026) (describing how the executive can choose to detain applicants for admission under either § 1225(b) or § 1226).  If detained under § 1226, asylum seekers would be eligible for bond, and thus could seek employment under § 1158.  But if detained under § 1225(b), asylum seekers are not eligible for bond.[4]  Because he has been detained pursuant to § 1225(b)(2), the government may detain Petitioner without bond pending removal.

Petitioner then argues that his detention violates the INA's regulations and the Administrative Procedure Act.  Petitioner points to *Executive Office for Immigration Review: Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum*, 62 Fed. Reg. 10312, 10333 (Mar. 6, 1997). There the agency stated that "[d]espite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination."  He argues that Respondents' current policy of detaining without bond is an "unlawful reversal or prior agency practice."  (DE [1] ¶ 118).

But that is not the case.  First, this statement in the Federal Register is not part of a codified regulation but is the agency's explanation, during the notice and comment

---

[4] Section 1225(b)(1)(B)(ii) explicitly requires detention of asylum seekers because otherwise, under § 1225(b)(1)(A), they would be subject to expedited removal.  But just because § 1225(b)(1) explicitly mandates detention for asylum seekers, does not mean asylum seekers under § 1225(b)(2) can be set free. Release is not an option under § 1225. Section 1225(b)(1)(B)(ii) just distinguishes asylum seekers who are detained from other applicants for admission who are expeditiously removed.

4

process, of an interim rule.  It is therefore not a regulation binding on anyone.  It is the regulatory equivalent of legislative history.  Second, as this Court explained in *Morales*, § 1225 and § 1226 both cover non-admitted aliens—applicants for admission.  The Government has always had authority to detain applicants for admission under either statute.  Prior to 2025 however, the executive chose to offer bond to applicants for admission already present in the country under § 1226.  The executive now is exercising its discretion to detain applicants for admission under § 1225.  This is not a change of interpretation; this is a permissible use of executive power to execute the law as the chief executive determines best.  The separation of powers mandates that the Court cannot direct the executive how to execute the laws.

This statement in the Federal Register actually cuts against Petitioner's statutory argument.  The agency determined that "aliens who are present without having been admitted or paroled  . . . will be eligible for bond and bond redetermination" "*despite being applicants for admission*."  62 Fed. Reg. at 10333 (emphasis added).  In other words, DHS stated that it would detain applicants for admission under § 1226 even though § 1225 applied.  Since 1997, DHS has recognized that § 1225 applies to applicants for admission.  Until 2025, DHS chose not to enforce it.  Starting in 2025, DHS chose to apply § 1225.  These are both lawful executive decisions. Therefore, Petitioner's detention violates neither the INA's regulations nor the Administrative Procedure Act.

Finally, Petitioner raises three due process arguments.  Prior to determining whether Petitioner's detention violates due process, the Court must consider if Petitioner is even entitled to due process rights.  "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (collecting cases).  But for "alien[s]

seeking initial entry,"—*i.e.*, those "'who have never been naturalized, nor acquired any domicil or residence within the United States, nor even been admitted into the country pursuant to law,'"—"'the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law.'" *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 138 (2020) (quoting *Nishimura Ekiu v. United States*, 142 U.S. 651, 660 (1892)). "When an alien arrives at a port of entry—for example, an international airport—the alien is on U. S. soil, but the alien is not considered to have entered the country for the purposes of this rule." *Id.* at 139. Indeed, "aliens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are 'treated' for due process purposes 'as if stopped at the border.'" *Id.* (quoting *Shaughnessy v. U.S. ex rel. Mezei*, 345 U.S. 206, 212 (1953)).[5] "[A]n alien who tries to enter the country illegally is treated as an "applicant for admission," § 1225(a)(1), and an alien who is detained shortly after unlawful entry cannot be said to have "effected an entry." *Id.* at 140 (quoting *Zadvydas*, 533 U.S. at 693).

Here, Petitioner was initially detained at 4:30 p.m. on October 9, 2023 after entering the country at 4:29 p.m. on the same day. (DE [5-9]). He was in the country for one minute before being apprehended, detained, and placed in removal proceedings. Under *Thuraissigiam* and *Zadvydas*, Petitioner did not effect an entry. Since he was detained immediately, he is not considered to have entered the country, and thus is only entitled to the due process rights provided by Congress. *Thuraissigiam*, 591 U.S. at 138-140. This is true even though Petitioner was paroled on his own recognizance three days later. *Id.* at 139. Even though released for two years, Petitioner is treated as if he had

---

[5] *Mezei* held that an excludable alien who was denied entry and indefinitely detained at Ellis Island was treated "as if stopped at the border" and thus not deprived of due process. *See Mezei*, 345 U.S. at 212–16.

been stopped at the border the entire time he has been present. *Thuraissigiam*, 591 U.S. at 139.  As for those rights provided by Congress, Congress has mandated that asylum seekers be detained pending administration of their petitions.   § 1225(b)(1)(B)(ii). Petitioner is not entitled to any more procedural protections than he received when he was recently detained under § 1225(b).

IV.    CONCLUSION

For the reasons discussed above, the Court concludes that Petitioner's detention under 8 U.S.C. § 1225(b)(2) is permissible.  Petitioner is not entitled to release or a bond hearing pending removal.  Accordingly, it is hereby **ORDERED AND ADJUDGED** that the Petition (DE [1]) is **DENIED**. The Clerk of Court is directed to **CLOSE** this case and **DENY AS MOOT** any pending motions.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 6th day of April 2026.

RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies furnished counsel via CM/ECF